IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**EMMANUEL VENEGAS-VASQUEZ**,<br><br>Defendant. | Case No. 3:18-cr-301-SI<br><br>**OPINION AND ORDER** |

Billy J. Williams, United States Attorney, and Gregory R. Nyhus and Sarah K. Barr, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204. Of Attorneys for the United States.

Conor Huseby, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, 101 SW Main Street, Suite 1700, Portland, Oregon 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

In this criminal case, the Court must decide whether a recipient of Deferred Action for Childhood Arrivals ("DACA"), who also was paroled into the United States, may be prosecuted for violating a federal law that prohibits an alien who is illegally or unlawfully in the United States from possessing a firearm. Defendant Emmanuel Venegas-Vasquez ("Venegas-Vasquez") is charged with one count of violating 18 U.S.C. § 922(g)(5). That statute makes it unlawful for an alien who is "illegally or unlawfully in the United States" to possess a firearm or ammunition. Venegas-Vasquez contends that he was not illegally or unlawfully in the United States, and thus

PAGE 1 – OPINION AND ORDER

the indictment should be dismissed for failure to allege an element of the offense. Venegas-Vasquez relies upon two facts, which the Government does not dispute. First, in January 2015, United States Citizenship and Immigration Services ("USCIS") granted Venegas-Vasquez Deferred Action for Childhood Arrivals ("DACA"). Second, in 2016, USCIS "paroled" Venegas-Vasquez into the United States, pursuant to § 212(d)(5)(A) of the Immigration and Nationality Act ("INA"), as amended, 8 U.S.C. § 1182(a)(9)(B)(iii). Based on these facts, Venegas-Vasquez argues that he was not illegally or unlawfully in the United States at the time the indictment alleges he was in possession of two firearms, May 26, 2018. The Government responds by arguing that Venegas-Vasquez did not have legal or lawful status in the United States and that is all that is required under that element of § 922(g)(5). The Court concludes that § 922(g)(5)(A) is grievously ambiguous regarding whether the phrase "illegally or unlawfully in the United States" refers to either presence or status. Because this element defines the conduct that constitutes a crime, under the rule of lenity Venegas-Vasquez may not be prosecuted for this offense. Accordingly, the Court grants Defendant's motion to dismiss.

## BACKGROUND

Venegas-Vasquez is an alien citizen of Mexico. It is not disputed that Venegas-Vasquez unlawfully entered the United States as a child in 2001. Immigrations and Customs Enforcement ("ICE") records show that Venegas-Vasquez has applied for neither citizenship nor residence in the United States.

In September 2014, Venegas-Vasquez applied to USCIS under the DACA program. On January 22, 2015, USCIS granted Venegas-Vasquez DACA, and renewed his DACA in January 2018. In January 2015, the USCIS also provided Venegas-Vasquez with an employment authorization card, allowing him to work in the United States. In February 2015, the Social Security Administration issued a social security number to Venegas-Vasquez. In addition, in

PAGE 2 – OPINION AND ORDER

March 2016, Venegas-Vasquez applied for permission to travel to Mexico to visit his family. USCIS authorized Venegas-Vasquez for parole back into the United States under § 212(d)(5) of the INA, and Venegas-Vasquez was paroled back into the United States in 2016. ECF 16-10.[1]

On May 26, 2017, police officers responded to two calls, one from Venegas-Vasquez' neighbor, who reported hearing gunfire, and another from Venegas-Vasquez' wife. Police arrived and took Venegas-Vasquez into custody. With Venegas-Vasquez' consent, the police searched his truck and found a loaded 9mm handgun and a loaded AK-47 style assault rifle. On February 4, 2018, a federal grand jury indicted Venegas-Vasquez for one count of violating 18 U.S.C. § 922(g)(5).

## STANDARDS

Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure "allows a defendant to file a pretrial motion to dismiss an indictment for failure to state an offense if the motion can be determined without a trial on the merits." *United States v. Kelly*, 874 F.3d 1037, 1046 (9th Cir. 2017). A pretrial motion to dismiss is appropriate if the motion involves a question of law as opposed to a question of fact. *Id.* In determining whether an indictment charges a cognizable offense, the Court is bound by the four corners of the indictment, must accept the truth of the allegations in the indictment, and cannot consider evidence that does not appear on the face of the indictment. *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014). The question of law at issue in this pretrial motion is the meaning of the phrase "illegally or unlawfully in the United States" in 18 U.S.C. § 922(g)(5)(A).

---

[1] In this context, "parole" means an administrative practice by which USCIS grants an alien "permission to return to the United States." *Hassan v. Chertoff*, 593 F.3d 785, 788 (9th Cir. 2010). Later in this Opinion and Order, the Court discusses parole in greater detail.

# DISCUSSION

## A. Statutory Interpretation and § 922(g)(5)

Section 922(g)(5) states that it shall be unlawful for any person "who being an alien-- (A) is illegally or unlawfully in the United States; or (B) except as provided in subsection (y)(2), has been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(26)))" to possess in or affecting commerce, any firearm or ammunition. The statute provides no definitional guidance on what it means to be "illegally or unlawfully in the United States." *See* § 921 (defining terms for purposes of the statute).

"[S]tatutory interpretation turns on 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341(1997)). When a term is not further defined by Congress, courts will construe the term according to its "ordinary and contemporary common meaning." *United States v. W.R. Grace*, 504 F.3d 745, 755 (9th Cir. 2007). Courts may refer to a dictionary to determine the ordinary and contemporary common meaning of a word. *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009).

Black's Law Dictionary defines "illegal" as "forbidden by law" and "illegality" as "an act that is not authorized by law" or "the state of not being legally authorized." BLACK'S LAW DICTIONARY 815 (9th ed. 2009). Black's Law Dictionary defines "unlawful" as "not authorized by law; illegal." BLACK'S LAW DICTIONARY 1675 (9th ed. 2009). Section 922(g)(5) uses these terms in their adverb form, modifying the phrase "in the United States." These dictionary definitions do not resolve a potential textual ambiguity in the statute, as argued by the parties: whether "illegally or unlawfully in the United States" means illegal or unlawful "presence" or illegal or unlawful "immigration status."

The statute does not expressly use the terms "present" or "presence;" nor does it use the terms "status" or "immigration status." Venegas-Vasquez emphasizes that by referring to individuals who are illegally or unlawfully *in the United States*, the focus of § 922(g)(5) is on the lawfulness of a person's physical presence in the United States, not their immigration status. In response, the Government emphasizes the lack of any mention of the word "presence" in the statute. The Supreme Court has cautioned that "we ordinarily resist reading words or elements into a statute that do not appear on its face." *Dean v. United States*, 556 U.S. 568, 572 (2009). The Court notes, however, that the word "in," which does appear in § 922(g)(5), is more naturally read to relate to physical or geographical presence, rather than a status, such a immigration status, and that neither "presence" nor "status" appears in the statute.

The Ninth Circuit has confirmed that physical presence was one of the elements required for an alien to be "*in* the United States" for the purposes of § 922(g)(5)(A). *U.S. v. Lopez-Perera*, 438 f.3d 932, 935-36 (9th Cir. 2006) (emphasis original). Although this case offers some support to Venegas-Vasquez' interpretation of the statute, *Lopez-Perera* did not address the specific question relevant to this case, namely the definition of "*illegally or unlawfully*" in the United States. *Lopez-Perera* did note, however, "the confluence of immigration law and criminal law inherent in § 922(g)(5)(A)" and found that it was necessary to use immigration law definitions in interpreting that statute. *Id.* at 936. The Court therefore rejects the Government's argument that this Court should not look to immigration law definitions when interpreting the criminal statute of § 922(g)(5)(A). Instead, the Court considers the meaning of both "presence" and "status" under federal immigration law to analyze whether either term appropriately expresses the meaning of § 922(g)(5), and to analyze Venegas-Vasquez' argument that he was not unlawfully

present, either because of his receipt of DACA or because he was paroled into the United States, or both.

## B. Presence versus Status

The Ninth Circuit has noted that the "terms 'presence' and 'status' are terms of art in the scheme of federal immigration law, and they are not necessarily interchangeable." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1073 (9th Cir. 2014) (*Brewer I*). Under the INA, an alien is "unlawfully present in the United States if the alien is present in the United States after the expiration of the period of stay authorized by the Attorney General or is present in the United States without being admitted or paroled." 8 U.S.C. § 1182(a)(9)(B)(ii). Unlawful presence can affect an alien's future admissibility because the total duration of unlawful presence may be considered in later efforts by the alien when seeking lawfully to reenter the United States. 8 U.S.C. §§ 1182(a), (a)(9)(B)(ii).

Contrary to the Government's position, unlawful presence is not synonymous with unlawful status. Other Circuits, as well as the Board of Immigration Appeals, have noted that

> unlawful presence and unlawful status are distinct concepts in the argot of immigration specialists. It is entirely possible for aliens to be lawfully present (*i.e.*, in a "period of stay authorized by the Attorney General") even though their lawful status has expired. *See In re L–K*, 23 I. & N. Dec. 677, 680–81 (BIA 2004) (distinguishing status and presence). Indeed, just that ordinarily happens when a person's status becomes unlawful while she has a pending adjustment application. *See* 8 U.S.C. § 1182(a)(9)(B)(iv).

*Chaudhry v. Holder*, 705 F.3d 289, 291 (7th Cir. 2013) (Wood, J.); *see also Dhuka v. Holder*, 716 F.3d 149, 154–59 (5th Cir. 2013) (accepting the Board's distinction between presence and status and rejecting the argument that an authorized stay pursuant to 8 U.S.C. § 1182(a)(9)(B)(ii) is equivalent to lawful status). Further, although the INA does not define "lawful immigration

status," USCIS has promulgated a regulation defining the term. 8 C.F.R. § 245.1(d)(1). Lawful immigration status

> will only describe the immigration status of an individual who is:
> (i) In lawful permanent resident status; (ii) An alien admitted to the United States in nonimmigrant status as defined in section 101(a)(15) of the Act, whose initial period of admission has not expired or whose nonimmigrant status has been extended in accordance with part 214 of this chapter: (iii) In refugee status under section 207 of the Act, such status not having been revoked; (iv) In asylee status under section 208 of the Act, such status not having been revoked; (v) In parole status which has not expired, been revoked or terminated; or (vi) Eligible for the benefits of Public Law 101–238 (the Immigration Nursing Relief Act of 1989) and files an application for adjustment of status on or before October 17, 1991.

*Id.* The Court notes that Venegas-Vasquez seemingly did, at one point, have "lawful immigration status" under subpart (v) of the USCIS definition because of his parole status. Venegas-Vasquez' parole status, however, ended on May 30, 2017. Venegas-Vasquez is charged with possessing a firearm on or about May 26, 2018, and therefore he did not have lawful immigration status because of parole at that time. Venegas-Vasquez does not assert that he had lawful immigration status under any of the other specified subparts.

Before analyzing Venegas-Vasquez' arguments that his receipt of DACA and his being paroled into the country means that he was not "unlawfully present," this Court notes that the Seventh Circuit, at least implicitly, held in *Chaudhry* that the double negative of an alien being *not unlawfully present* under 8 U.S.C. § 1182(a)(9)(B)(ii) means that the alien is "lawfully present." *Chaudhry*, 705 F.3d at 291. This Court, however, need not further wade into those waters.

### C. No Unlawful Presence Based on DACA

Venegas-Vasquez argues that he was not unlawfully present due to his receipt of DACA. It bears repeating that an alien is unlawfully present for the purposes of the INA "if the alien is

PAGE 7 – OPINION AND ORDER

present in the United States after the expiration of the period of stay authorized by the Attorney General or is present in the United States without being admitted or paroled." 8 U.S.C. § 1182(a)(9)(B)(iii). The Ninth Circuit has observed that the Department of Homeland Security ("DHS") "considers DACA recipients not to be unlawfully present in the United States *because their deferred action is a period of stay authorized by the Attorney General*." *Brewer I*, 757 F.3d at 1059 (emphasis added). The Ninth Circuit also has made clear that "DACA recipients enjoy no formal immigration *status*." *Id.* (emphasis added); *see also Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 968 (9th Cir. 2017) (*Brewer II*) ("DACA recipients . . . do not, and may never, possess formal immigration status.").

The Ninth Circuit also noted, in reference to the "Frequently Asked Questions" section of the website for USCIS that "it cannot be disputed that the FAQ section of a federal website is not a source of 'federal law,' nor would an interpretation announced there be subject to deference by a court." *Brewer I*, 757 F.3d at 1073. That FAQ section noted that "although deferred action does not confer a lawful immigration status, your period of stay is authorized by the Department of Homeland Security while your deferred action is in effect and, for admissibility purposes, you are considered to be *lawfully present* in the United States during that time." ECF 16 (emphasis added). At a minimum, therefore, this FAQ shows what the Government was itself communicating to recipients of DACA, including Venegas-Vasquez, that they were "lawfully present in the United States" while their deferred action is in effect.

The Court therefore concludes that Venegas-Vasquez was not "unlawfully present" because his deferred action is a period of stay authorized by the Attorney General. The Court also concludes, however, that Venegas-Vasquez has no formal immigration status based on his receipt of DACA. As a result, if "illegally or unlawfully in the United States" in § 922(g)(5)

means or requires illegal or unlawful *presence*, then Venegas-Vasquez was not illegally or unlawfully in the United States, and the indictment must be dismissed. If, however, "illegally or unlawfully in the United States" means illegal or unlawful *immigration status*, then Venegas-Vasquez was illegally or unlawfully in the United States, and the indictment should not be dismissed.

The Government is correct that Congress did not contemplate DACA when it enacted § 922(g)(5), because DACA was first announced in 2012, and § 922(g)(5) became law in 1968. The Court, however, also finds persuasive Venegas-Vasquez's argument concerning the legislative history of § 922. The legislative history of that statute indicates that Congress intended this criminal law to apply to individuals who could "not be trusted to possess a firearm without becoming a threat to society." 114 Cong. Rec. 14, 773 (1968). Congressman Emanuel Celler, the House Manager of the Act, stated the "bill seeks to maximize the possibility of keeping firearms out of the hands of such persons" as "drug addicts, mental incompetents, persons with a history of mental disturbances, and persons convicted of certain offenses . . . ." 114 Cong. Rec. 21, 784 (1986). As the Supreme Court explained: "The very structure of the Gun Control Act demonstrates that Congress did not intend merely to restrict interstate sales but sought broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." *Barret v. United States*, 423 U.S. 212, 218 (1976). Further, the Second Circuit noted, in upholding § 1202(a)(5), the predecessor to § 922(g)(5)(A), "illegal aliens" are "likely to maintain no permanent address in this country, elude detection through assumed identity, and-already living outside the law-resort to illegal activities to maintain a livelihood." *United States v. Toner*, 728 F.2d 115, 128-129 (2d Cir. 1984) (*quoting United States v. Toner*, No. CR82-377 (E.D.N.Y. May 17, 1983)).

The Court agrees that the set of people Congress intended to prohibit from possessing firearms in § 922 is very different from the set of DACA recipients, who are required to report their address to the Government, who have intentionally revealed themselves to the Government through their DACA application, who are required to work and are therefore are not "living outside the law." and who cannot obtain DACA if they have been "convicted of a felony offense, a significant misdemeanor offense, multiple misdemeanor offenses, or otherwise pose[] a threat to national security or public safety." EXERCISING PROSECUTORIAL DISCRETION WITH RESPECT TO INDIVIDUALS WHO CAME TO THE UNITED STATES AS CHILDREN (June 15, 2012), https://www.dhs.gov/xlibrary/assets/s1-exercising-prosecutorial-discretion-individuals-who-came-to-us-as-children.pdf (last visited on April 15, 2019).

This legislative history was a component of the Fifth Circuit's decision in *United States v. Orellana*, 405 F.3d 360 (5th Cir. 2005), which held that a defendant who was granted Temporary Protected Status ("TPS"), was not illegally or unlawfully in the United States for purposes of § 922(g)(5)(A). *See Orellana*, 405 F.3d at 367-68 (examining legislative history and noting that TPS recipients were not "part of the underground population of persons who, unable to secure lawful employment, have a greater likelihood to engage in criminal conduct.").

The Court notes that *Orellana* and other cases interpreting § 922(g)(5)(A) are imprecise in their usage of "presence" and "status" when describing the relevant analysis for whether an alien is illegally or unlawfully in the United States. *Id.* at 366-69 ("the plain language of section 922(g)(5)(A) provides support for the proposition that [Orellana's] *presence* in the United States was lawful" . . . "Little in this structure signals a Congressional purpose of criminalizing firearm ownership by aliens present under a lawful *status*.") (emphases added). The Fifth Circuit appears to have based its decision in *Orellana* on the defendant's immigration

"status," but then added that no one with a lawful status has an unlawful presence. *Id.* at 370 ("Importantly, an alien in receipt of TPS is in lawful status. . . . Turning to the balance of cases addressing the legality of an alien's presence pursuant to section 922(g)(5)(A), we find no authority for the proposition that an alien who has acquired a valid status is "illegally" or "unlawfully" present in the United States."). More recently, the Fifth Circuit continued to focus on immigration status when it decided *United States v. Arrieta*, 862 F.3d 512 (5th Cir. 2017). In that case, the Fifth Circuit held that for DACA recipients, "the absence of lawful immigration status is controlling" for the purposes of § 922(g)(5) and that "because DACA does not confer or alter immigration status, § 922(g)(5)(A) is applicable in the case of an alien granted deferred action under DACA." *Id.* at 513-16.

The state of the precedent in the Ninth Circuit is more complex. Although the Ninth Circuit has never addressed the specific question of whether an alien who has received DACA is illegally or unlawfully in the United States under § 922(g)(5)(A) in the precise context raised in this case, the Ninth Circuit has addressed the meaning of illegally or unlawfully in the United States in § 922(g)(5)(A) in other contexts. In U*nited States v. Latu*, 479 F.3d 1153 (9th Cir. 2007), Latu challenged his conviction under § 922(g)(5)(A) on the grounds that "he had filed a non-frivolous application for adjustment of status and was allowed to remain in the United States during the pendency of the application." *Id.* at 1155. The Ninth Circuit adopted the definition of "illegally or unlawfully in the United States" set forth in the applicable Bureau of Alcohol, Tobacco, and Firearms ("ATF") regulation at 27 U.S.C. § 478.11(b). *Id.* at 1159. ATF defined "illegally or unlawfully in the United States" as aliens "not in valid immigrant, nonimmigrant, or parole status" with several listed examples. 27 U.S.C. § 478.11(b). The Ninth Circuit concluded

that because § 922(g)(5) "is silent as to the definition of 'illegally and unlawfully in the United States,' we *defer to the ATF's interpretation*." *Latu*, 479 F.3d at 1158 (emphasis added).

After *Latu*, however, the Supreme Court has clarified that it has "never held that the Government's reading of a *criminal statute* is entitled to any deference." *United States v. Apel*, 571 U.S. 359, 369 (2014) (emphasis added). The Supreme Court held in a different case that the ATF's interpretation of another subsection of § 922 was not entitled to any deference. *Abramski v. United States*, 573 U.S. 169, 191 (2014) ("We think ATF's old position no more relevant than its current one—which is to say, not relevant at all.")

Normally, the Ninth Circuit's decision in *Latu* would be binding upon this Court. Nevertheless, that decision and other cases deferring to the ATF's interpretation of § 922(g)(5) are not controlling precedent when a Supreme Court decision has abrogated the principle of the previous decisions. *Branch v. Tunnell*, 14 F.3d 449, 456 (9th Cir. 1994); *see also United States v. Anaya-Acosta*, 629 F.3d 1091, 1094 (9th Cir. 2011) (affirming defendant's conviction under § 922(g)(5)(A), pre-*Apel*, on the grounds that "the issuance of a departure control order does not modify an alien's immigration status" after the panel "defer[ed] to the ATF's interpretation" of "illegally or unlawfully in the United States."). The Court, therefore, concludes that the more recent Supreme Court holdings abrogate the earlier holdings of Ninth Circuit cases that held "illegally or unlawfully in the United States" to mean unlawful immigration status, when those cases were based on deference to the ATF's interpretation of a criminal statute. Moreover, neither the Government nor Venegas-Vasquez cites Ninth Circuit precedent after the Supreme Court's 2014 decision in *Apel* that interprets § 922(g)(5) without deferring to the interpretation of the ATF.[2]

---

[2] The Government notes that *Latu* also stated that the ATF regulation

**D. No Unlawful Presence Based on Parole**

Venegas-Vasquez also argues that he was not unlawfully present in the United States because unlawful presence occurs "if the alien . . . is present in the United States without being admitted or paroled." 8 U.S.C. § 1182(a)(9)(B)(iii). Venegas-Vasquez argues, and the Court agrees, that because he was present in the United States after having been paroled into the United States on May 31, 2016, his presence in the United States was not "unlawful," at least for the purposes of 8 U.S.C. § 1182(a)(9)(B)(iii). The Government argues that because Venegas-Vasquez' grant of advanced parole had expired at the time of his alleged possession of firearms, he no longer was lawfully present. The Court, however, notes that "paroled" in 8 U.S.C. § 1182(a)(9)(B)(iii) is in the past tense and finds that Venegas-Vasquez was present in the United States after "being paroled." The Court thus concludes that Venegas-Vasquez was not unlawfully present in the United States under 8 U.S.C. § 1182(a)(9)(B)(iii).

**E. Rule of Lenity**

The question remains how to apply Venegas-Vasquez' lack of unlawful presence to § 922(g)(5). Because of *Apel*, the Court is left to conduct its own statutory analysis without

---

> does not necessarily foreclose Latu's argument that although he *was* unlawfully in the United States, his presence once again became lawful when he applied for adjustment of status. However, absent a statute preventing Latu's removability upon the filing of his application for adjustment of status, we can envision no interpretation that renders Latu's presence anything other than "illegal[ ] or unlawful[ ]." As applied to the facts of this case, Latu "is a nonimmigrant . . . whose authorized period of stay has expired" and thus he meets the literal definition of the term "illegally or unlawfully in the United States."

*Latu*, 479 F.3d at 1159. Crucially, the "literal definition" used in the final sentence above is quoted from the ATF interpretation of "illegally or unlawfully in the United States." Thus, this portion of the opinion, too, could "envision no interpretation" rendering Latu's presence lawful *given the definition used by the ATF*. This portion of *Latu*, therefore, seems equally abrogated by *Apel*.

deference to agency interpretation of a criminal statute. The Court concludes that Venegas-Vasquez' argument based on the rule of lenity is particularly persuasive. That rule "requires courts to limit the reach of criminal statutes to the clear import of their text and construe any ambiguity against the government." *United States v. Romm*, 455 F.3d 990, 1001 (9th Cir. 2006). The rule of lenity applies "only where 'after seizing everything from which aid can be derived, the Court is left with an ambiguous statute.'" *United States v. Nader*, 542 F.3d 713, 721 (9th Cir. 2008) (*quoting Smith v. United States*, 508 U.S. 223, 239 (1993)). The degree of ambiguity or uncertainty must be "grievous." *Maracich v. Spears*, 570 U.S. 48, 76 (2013). In such a case of grievous ambiguity, fundamental principles of due process mandate that "no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited." *Nader*, 542 F.3d at 721 (citation and internal quotation marks omitted).

The Court holds that § 922(g)(5) is coherent when "illegally or unlawfully in the United States" is defined either as "illegal or unlawful presence" or as "illegal or unlawful immigration status." No provisions are redundant, and the statute is not rendered absurd. As the Supreme Court has made clear:

> Under a long line of our decisions, the tie must go to the defendant. The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them. *See United States v. Gradwell*, 243 U.S. 476, 485 (1917); *McBoyle v. United States*, 283 U.S. 25, 27 (1931); *United States v. Bass*, 404 U.S. 336, 347–349 (1971). This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed. It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead.

*United States v. Santos*, 553 U.S. 507, 513–14, (2008) (Scalia, J.). The Court finds that in this case the "venerable rule" of lenity applies because the meaning of "illegally or unlawfully in the

PAGE 14 – OPINION AND ORDER

United States" in § 922(g)(5) is grievously ambiguous or uncertain. *See Orellana*, 405 F.3d at 370-71 (finding rule of lenity applicable because the meaning of "illegally or unlawfully in the United States" in § 922(g)(5) was ambiguous); *United States v. Diego Lopez*, 2017 WL 6347850 (E.D. Tn. 2017) (holding that § 922(g)(5)(A) was so ambiguous as to be unconstitutionally vague as applied to DACA recipients); *but see United States v. Fierro-Morales*, 2018 WL 3126116 (S.D. Cal. June 26, 2018) (holding that § 922(g)(5)(A) was unambiguous).

Several Justices of the Supreme Court, in discussing the rule of lenity, have stated that it is a

> liberty-protecting and democracy-promoting rule that is "perhaps not much less old than construction itself." *United States v. Wiltberger*, 5 Wheat. 76, 95, 5 L.Ed. 37 (1820) (Marshall, C.J.); *see, e.g., 1 W. Blackstone*, Commentaries on the Laws of England 88 (1765) ("Penal statutes must be construed strictly"). As Chief Justice Marshall wrote, the rule is "founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department." *Wiltberger*, supra, at 95. It forbids a court to criminalize an act simply because the court deems that act "of equal atrocity, or of kindred character, with those which are enumerated." *Id.*, at 96.

*Abramski*, 573 U.S. at 204 (Scalia, J., dissenting, joined by Roberts, C.J., Thomas and Alito, JJ.). This Court agrees that the power of criminal punishment is vested in the legislative branch, and that if Congress seeks to criminalize the possession of a firearm by an alien who is not unlawfully or illegally present, it must do so clearly and unambiguously.

## CONCLUSION

The Court holds that the meaning of "illegally or unlawfully in the United States" in § 922(g)(5) is grievously ambiguous and uncertain and therefore that Venegas-Vasquez is entitled to the benefit of the rule of lenity. The indictment against him is dismissed.

**IT IS SO ORDERED.**

DATED this 19th day of April, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge